## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

CAPITAL TERMINAL COMPANY
        Plaintiff,

v.

GETTY PROPERTIES CORP., and
GETTY REALTY CORP.,
        Defendants.

C.A. No. CV 02 4982

### AMENDED ANSWER TO COMPLAINT AND COUNTERCLAIM

Defendant, Getty Properties Corp. ("Getty Properties" or "Defendant"), by its attorneys, Partridge Snow & Hahn LLP, for its answer to the complaint of Capital Terminal Company ("Capital"), hereby responds as follows:

1.  Getty Properties admits the allegations contained in Paragraph 1 of the Complaint.

2.  Getty Properties admits the allegations contained in Paragraph 2 of the Complaint.

3.  Getty Properties denies knowledge or information sufficient to form a belief with respect to the allegations contained in Paragraph 3 of the Complaint, except admits that as a result of a series of agreements, Capital Terminal appears to be the successor in interest to the Providence And Worcester Railroad Company and Capital Properties, Inc.

4.  Getty Properties denies the allegations contained in Paragraph 4 of the Complaint, but admits that the issue of ownership of the Wilkesbarre Pier was addressed by the Rhode Island Supreme Court in the case of <u>Providence And Worcester Railroad Company vs. Exxon Corporation, et al</u>, 116 R.I. 470, 359 A.2d 329 (1976).

5. Getty Properties denies the allegations contained in Paragraph 5 of the Complaint.

6. Getty Properties admits the allegations in Paragraph 6 of the Complaint.

7. Getty Properties admits the allegations contained in Paragraph 7 of the Complaint.

8. Getty Properties admits that this Court has jurisdiction over this action.

9. Getty Properties admits the allegations contained in Paragraph 9 of the Complaint.

10. Getty Properties admits the allegations contained in Paragraph 10.

11. Getty Properties denies the allegations contained in Paragraph 11 but admits that Getty Petroleum Corp. executed a document known as Guaranty Indemnity Agreement effective January 3, 1986.

12. Getty Properties denies the allegations contained in Paragraph 12, but admits that selected sections of that agreement have been quoted correctly in Paragraph 12.

13. Getty Properties denies the allegations contained in Paragraph 13, but admits that selected sections of that agreement have been quoted correctly in Paragraph 13 of the Complaint.

14. Getty Properties admits the allegations contained in Paragraph 14 of the Complaint.

15. Getty Properties denies knowledge and information sufficient to form a belief with respect to the allegations contained in Paragraph 15 of the Complaint.

16. Getty Properties repeats and realleges each and every answer contained in Paragraphs 1 through 15 above, as if more fully set forth herein at length.

17. Getty Properties denies the allegations contained in Paragraph 17 of the Complaint.

## AFFIRMATIVE DEFENSES AND OTHER DEFENSES

### FIRST DEFENSE

Plaintiff's complaint fails to state a claim against the Defendant upon which relief may be granted.

### SECOND DEFENSE

The Plaintiff cannot be entitled to enforce the terms of the January , 1986 Guaranty and Indemnity Agreement relating to the Operating Agreement because all members of the group have withdrawn from the Operating Agreement and rendering the Guaranty and Indemnity Agreement a nullity.

### THIRD DEFENSE

Under the doctrine of mitigation of damages the Plaintiff has failed to mitigate the damages it now claims.

### FOURTH DEFENSE

Plaintiff's claims against the Defendant are barred by the equitable doctrine of accord and satisfaction.

### FIFTH DEFENSE

Plaintiff's claims against the Defendant are barred by the equitable doctrine of Waiver.

### SIXTH DEFENSE

Plaintiff's claims against the Defendant are barred by the equitable doctrine of Estoppel.

**SEVENTH DEFENSE**

Plaintiff's claims are barred by the doctrine of laches.

**EIGHTH DEFENSE**

Plaintiff's claims are barred by the Statute of Limitations.

**NINTH DEFENSE**

As to the allegations in the Complaint involving the Amended and Restated Wilkesbarre Pier Operating Agreement and its successor Agreements, the Complaint should be dismissed, or the action should be stayed because the same allegations and demands are the subject of a suit previously filed and now pending in the District Court of Rhode Island.

**COUNTERCLAIM**

Defendant Counterclaim-Plaintiff Getty Properties Corp. ("Getty Properties"), for its Counterclaim against Plaintiff alleges as follows:

1. Getty Properties is a corporation duly organized and existing under the laws of the State of Delaware with its principal place of business located at 125 Jericho Turnpike, Jericho, New York.

2. Capital Terminal Company ("Capital Terminal") is a corporation duly organized and existing pursuant to the laws of the State of Rhode Island with its principal place of business located at 100 Dexter Rd., East Providence, Rhode Island.

3. Jurisdiction over this counterclaim is proper pursuant to 28 U.S.C. § 1332(a) in that there is diversity of citizenship between the parties and the amount in controversy exceeds the jurisdictional minimum. Supplemental jurisdiction also exists pursuant to 28 U.S.C. § 1367. Venue is proper pursuant to 28 U.S.C. § 1391(a).

      4.      Capital Terminal is the owner of the Wilkesbarre Pier located on the Seekonk River in the City of East Providence, Rhode Island ("the Pier").

      5.      For at least 50 years, the Pier has been used by Getty Properties, Capital Terminal, their predecessors-in-interest, and others, to receive and discharge petroleum products. Getty Properties has the right to use the northerly side of the Pier to receive and discharge petroleum products from the Pier pursuant to agreements dating back to 1941. Capital Terminal and its predecessors have acknowledged and confirmed Getty Properties' and its predecessors' right to use the Pier on multiple occasions.

      6.      Both Capital Terminal and Getty Properties operate petroleum storage terminal facilities approximately 2½ miles up the Seekonk River from the Pier. Petroleum products arriving at the Pier by ship or barge are unloaded and transported to these storage terminals through pipelines and related facilities both on and off the Pier owned by Getty Properties. (the "Petroleum Pipelines")

      7.      In 1984, Capital Terminal's predecessor-in-interest challenged the right of Getty Properties' predecessor-in-interest to use certain property on Dexter Road in East Providence, Rhode Island on which the Petroleum Pipelines running from the Pier were constructed. <u>Providence and Worcester Railroad Co. v. Getty Refining and Marketing</u>, C.A. No. 84-5357, Sixth Division District Court, State of Rhode Island (the "1984 Litigation"). The 1984 Litigation, if successful, would have interfered with Getty Properties' and its predecessors' ability to transport petroleum products from the Pier to their storage terminal and forced them to negotiate with Capital Terminal and its predecessors for the right to continue these operations.

      8.      On or about July 17, 1984, Getty Properties' predecessor-in-interest moved for removal of the 1984 Litigation from the District Court of the State of Rhode Island, to

the United States District Court for the District of Rhode Island wherein that action became <u>Providence And Worcester Railroad Company v. Getty Refining and Marketing</u>, C.A. 84-374/B.

9. On or about January 29, 1985 all parties to the 1984 Litigation entered into a Settlement Agreement (the "1985 Settlement Agreement") resolving that dispute, a true copy of which is attached hereto as <u>Exhibit A</u>.

10. Parties to the 1985 Settlement Agreement included Getty Properties' predecessor-in-interest, Texaco Refining & Marketing Inc. ("Texaco") as well as Capital Terminal's predecessors-in-interest, including Providence And Worcester Railroad Company, Capital Properties, Inc., Robert H. Eder and the Eder Trust.

11. The 1985 Settlement Agreement provided that Texaco Refining & Marketing, Inc., would pay Capital Terminal's predecessor approximately $820,000. In return, Capital Terminal's predecessors, among other things, acknowledged and agreed that Getty (as defined in the Settlement Agreement) had an "unqualified right to permanent, unimpeded use" of the Pier and the pipelines running from the Pier constructed by Getty for all materials handled by Getty. 1985 Settlement Agreement, ¶ 1. Capital Terminal's predecessors further agreed that they and their affiliates, successors and assigns would not "now or hereafter" assert any claims "affecting Getty's unqualified right to permanent, unimpeded use of the Pier . . . and the pipelines for all materials handled by Getty." *Id*.

12. As part of the 1985 Settlement Agreement all parties agreed to release Getty Properties' predecessor-in-interest "from and against any and all claims, demands, obligations, liabilities, suits and damages which they have or may have against Getty as of the date hereof." Capital Terminal's predecessors also agreed to hold Getty harmless "from and against any and all claims, suits, obligations, liabilities, and damages, including attorneys' fees,"

6

arising out of claims asserted by any of them or their successors affecting Getty's unqualified right to permanent, unimpeded use of the Pier and the pipelines described in the Agreement.

13. In March of 1997, Getty Properties' predecessor-in-interest Getty Petroleum Corp. was separated into two entities: Getty Realty Corp. (Del.) and Getty Petroleum Marketing Inc. ("Getty Petroleum Marketing"). At that time Getty Realty Corp. (Del.) entered into a lease with Getty Petroleum Marketing wherein Getty Petroleum Marketing would lease from Getty Realty Corp. (Del.) the right to use certain real property of Getty Realty Corp. (Del.) including the terminal facility in East Providence, Rhode Island and the Petroleum Pipelines and the right to use northerly side of the Pier to receive and discharge petroleum products.

14. On or about December 19, 1997 Getty Petroleum Marketing, as part of an overall settlement agreement resolving disputes with Capital Terminal's predecessor-in-interest concerning the Wilkesbarre Pier, entered into a Throughput Agreement with Capital Terminal's predecessor-in-interest regarding payment of fees for the rehabilitation of the Pier.

15. On or about April 27, 2000, counsel for Capital Terminal Company, Robert L. Tofel, notified Getty Petroleum Marketing of Capital Terminal's intent to "terminate the Throughput Agreement at the end of its term on December 31, 2002.

16. On or about August 2, 2000, Getty Properties and Getty Petroleum Marketing began litigation in the District of Rhode Island in order to protect and preserve their rights at the Pier entitled <u>Getty Petroleum Marketing Inc. and Getty Properties Corp. v. Capital Terminal Company</u>, C.A. No. 00-381 ML (the "2000 Litigation").

17. In the 2000 Litigation, Capital Terminal has asserted the claim that Getty Properties does not have the right to use the northerly side of the Pier, and has also challenged Getty's ownership of the Petroleum Pipelines and unloading facilities on the Pier. Getty

Properties has incurred significant damages as a result of Capital Terminal's challenge to its rights, including substantial litigation costs and attorneys' fees in both the 2000 Litigation and this action. These costs total at least $480,000 to date.

18. Capital Terminal's claims are without basis in law and fact and specifically in violation of the terms of the 1985 Settlement Agreement (<u>Exhibit A</u>) in which Capital Terminal's parties predecessors in interest agreed to indemnify Getty from all Claims "now or hereafter asserted" by any of the parties to the agreement or their successors affecting Getty's "unqualified right to permanent, unimpeded use of the Wilkesbarre Pier."

19. Said claims by Capital Terminal are a breach of valid and binding contractual provisions in the 1985 Settlement Agreement. Getty Properties is entitled to be indemnified by Capital Terminal pursuant to the 1985 Settlement Agreement for all of its damages, including attorneys' fees, arising from Capital Terminal's breach.

WHEREFORE, Defendant Getty Properties demands judgment on its Counterclaim as follows:

(a) In favor of Getty Properties in an amount not less than Four Hundred and Fifty Thousand Dollars ($480,000.00) on its Counterclaim against Capital Terminal with respect to its failure to comply with the terms and conditions of the 1985 Settlement Agreement;

(b) Awarding to Defendant its costs and attorneys' fees incurred in this action and interest as allowed by law;

(c) Granting to Getty Properties such other relief and this Court may deem necessary and proper.

## JURY TRIAL DEMAND

        Defendant and Counterclaim Plaintiff Getty Properties demands trial by jury on all issues that are so triable.

 

GETTY PROPERTIES CORP.
By Its Attorneys,

PARTRIDGE SNOW & HAHN LLP

 

James W. Ryan (#4042)
180 South Main Street
Providence, RI  02903-7120
(401) 861-8200
(401) 861-8210 FAX

DATED:   January__, 2003

## **CERTIFICATE OF SERVICE**

      I hereby certify that I mailed a copy of the within Answer and Counterclaim to Complaint this _____ day of _____ to Robert L. Tofel, Esq., Tofel, Karan & Partners, 780 Third Avenue, New York, NY  10017.

                                                                                                            _____

655555_2/2900-5
01/15/03